UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 4:10-CR-3-SPM/WCS-1

AMARI GRIFFITHS,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR JUDGMENT OF ACQUITTAL

THIS CAUSE comes before the Court on the Defendant's Motion for Judgment of Acquittal (doc. 24) and the Government's Response in Opposition (doc. 22). The issue is whether the passing of checks stolen from the mails constitutes aggravated identity theft under 18 U.S.C. § 1028A. For the reasons expressed herein, the Defendant's Motion will be granted, and the Defendant will be acquitted on Count Four of the indictment (doc. 1).

I. Factual Background

In January 2010, the Defendant was charged in a four-count indictment with conspiracy to defraud financial institutions, delay and destruction of mail matters by a postal employee, theft of mail matters, and aggravated identity theft. On June 21, 2010, the Defendant pleaded guilty to the first three counts, and the Court conducted a bench trial as to the fourth count, during which Defense and Government counsel presented oral argument on the legal issue of whether passing stolen checks constitutes identity theft pursuant to the applicable federal statutory scheme. The factual circumstances of the case, which were stipulated to by the Parties, are summarized as follows:

While an employee of the United States Postal Service, the Defendant was engaged in a conspiracy with his roommate, Tarri Lafavor, whereby the Defendant stole checks from the mails prior to their delivery to intended recipients. The conspirators solicited acquaintances who agreed to deposit the checks, forged with the fraudulent signatures of the parties named on the checks, into their respective accounts and subsequently withdraw funds from their financial institutions pursuant to those deposits, in exchange for "cuts" or fees. Count Four of the indictment charges the Defendant with identity theft for passing the check, and thereby using the "means of identification" presented on the check, of victim "E.R."

II. Legal Standard and Analysis

18 U.S.C. § 1028A makes it a federal crime to use "a means of identification of another person" during and in relation to several enumerated felonies, including bank fraud, with which the Defendant was charged under Count One and to which the Defendant has pleaded guilty. The punishment for aggravated identity theft is two years imprisonment in addition to the punishment imposed for the underlying felony. 18 U.S.C. § 1028(d)(7) defines "means of identification" as "any name or number that may be used, alone or in conjunction with any other information, to identity a specific individual," and includes four categories of information that satisfy this definition, the most pertinent of which, as it relates to a check itself, is subsection (D), "telecommunication identifying information or access device (as defined in section 1029(e))[.]" 18 U.S.C. § 1029(e) defines the term "access device" very broadly, but specifically and parenthetically excludes a transfer of funds originated solely by paper instrument. An "access device" is defined as

2

> any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)[.]

18 U.S.C. § 1029(e)(1).

Although the Eleventh Circuit has yet to address this specific issue, the weight of the available authority supports the proposition that the conduct of falsifying a signature on a stolen check and passing said stolen check does not constitute the use of an access device under the statute. In United States v. Hughey, the Fifth Circuit ruled that the "parenthetical exclusion unambiguously places the passing of bad checks and similar conduct outside the scope of the federal statute." 147 F.3d 423, 434 (5th Cir. 1998). See also United States v. Caputo, 808 F.2d 963, 966 (2nd Cir. 1987) (upholding conviction for possessing account numbers with the intent to defraud, but noting that "the statutory exception . . . in fact applies to passing bad or forged checks.").

While the issue in Hughey and in the instant case involves whether a criminal defendant violates the aggravated identity theft statute by passing a stolen check, the question of whether a check constitutes an access device pursuant to the same statutory provision has also arisen in several circuits in the sentencing context, as Section 2B1.1(b)(10) of the United States Sentencing Guidelines provides sentencing enhancements for certain offenses involving the use, making, production, or trafficking of access devices as defined under 18 U.S.C. § 1029(e). In this context, the Tenth Circuit ruled that use of equipment to create counterfeit checks does not satisfy the standard for the guideline enhancement and "that both the counterfeit checks and the

account numbers printed on those checks fall outside the statutory definition of an access device." United States v. Tatum, 518 F.3d 769, 772 (10th Cir. 2008). See also United States v. Scott, 448 F.3d 1040, 1045 (8th Cir. 2006) (ruling that the district court appropriately applied enhancement under USSG § 2B1.1(b)(10), but acknowledging that "[t]he subsection does not apply, however, to a defendant who merely forges another's signature to cash a stolen check or uses a stolen credit card to make a purchase."); but see United States v. Alfano, 271 Fed.Appx. 1, 2 (1st Cir. 2008) (finding that the district court did not commit plain error by applying an enhancement under USSG § 2B1.1(b)(10) where the issue was not preserved, but noting that the "'convoluted language' of the guideline and commentary is difficulty to parse.").

In support of the proposition that falsifying signatures on checks does amount to aggravated identity theft under the statute, the Government points to United States v. Cook, 336 Fed.Appx. 875 (11th Cir. 2009), which held that the district court did not commit plain error by finding that the defendant violated 18 U.S.C. § 1028A. However, the issue in that case was whether the defendant stole the means of identification of individuals or merely that of a corporation, and the question of whether passing a check constitutes use of an access device under the statute was not raised and has not been resolved by the Eleventh Circuit.

The result reached by most of the courts of appeals that have addressed the issue is further bolstered by the legislative history and intent of Congress when enacting the aggravated identity theft and related statutes. "Congress drafted the statute broadly to include any fraud arising from unauthorized use or counterfeiting of credit cards, debit cards, account numbers, or other devices capable of affording account access,

4

such as by electronic transfer. . . . Congress did not, however, intend to enact a comprehensive scheme that would completely supplant state law regulation of similar conduct." Hughey, 147 F.3d at 434. Indeed, the interpretation espoused by the Government would represent a sweeping expansion of federal criminal law into crimes involving forgery, an area which heretofore has been reserved primarily to the states.[1] While such an expansion would typically be expected to be accompanied by an express congressional pronouncement to that effect, here, there is just the opposite: an explicit and parenthetical exception for transfers originated solely by paper instrument.

The Government also argues that Congress should not be interpreted as having intended to make offenses involving debit cards actionable under the aggravated identity theft statute, while specifically excluding offenses involving checks, as many, if not most, purchasers consider the use of a debit card to be the functional equivalent of writing a check. However, the Court cannot be asked to substitute its reason for that of Congress, and it is clear that, in enacting the statute, Congress was most concerned with emerging crimes involving new means of fraud.

Lastly, the Government offers alternative methods of statutory interpretation to that proposed by the Defendant. First, the Government argues that because the term "means of identification" is described so broadly under 18 U.S.C. § 1028(d)(7), the four

---

[1] On this point, the Assistant United States Attorney offered at oral argument that the statute would not apply to all forgeries of signatures on checks, such that if one merely found a check, without having stolen it, forged a signature, and passed such check at a federally insured financial institution, one would not be charged with aggravated identity theft. However, the Court can find no basis in the statute itself for the distinction that theft of a check renders the check an access device, therefore constituting identity theft, while the illegal passing of a check one happened to find is not use of an access device subject to the same punishment.

included categories following the definition are illustrative examples which are not intended to be exhaustive, such that, while a check may not constitute an "access device," it may still satisfy the broader definition of "means of identification." However, reference to basic standards of statutory interpretation, including the *noscitur a sociis* canon of construction, reveals that when construing a statute, particularly a complex statutory scheme such as is at issue in the present case, general or ambiguous phrases are to be considered in light of the more specific terms surrounding or following them. Thus, while "means of identification" is described in broad terms within the first sentence of the statutory provision, the four listed categories (A through D) serve to clarify and qualify the more generic description of "means of identification" which they follow. Accordingly, as the term "access device" under subsection D specifically excludes solely paper transactions, the more general phrase, "means of identification," should not be interpreted as encompassing those transactions specifically excluded by the subsequent, specific provision. Otherwise, the parenthetical exception would be rendered meaningless.

Additionally, the Government argues that even though solely paper transactions are specifically excluded as access devices, the identifying information listed on the check, that is, the account holder's name and routing number, is specifically included as "means of identification" under the statute's other provisions, 18 U.S.C. § 1028(d)(7)(A) and (C). Similar arguments have been raised in the cases finding that forgery of checks does not constitute identity theft, and the courts appear to have had little trouble resolving the matter in favor of the Defendant's proffered interpretation. See Hughey, 147 F.3d at 435-36 ("We are not persuaded that Hughey's mere possession of the

6

numbers, at least without additional evidence demonstrating the possibility of an additional use, is sufficient to overcome the express statutory provision excluding his conduct from the ambit of § 1029."); Tatum, 518 F.3d at 772 ("The government introduced no evidence that Defendant used, possessed, produced, or trafficked in bank account numbers in any way except as part of his scheme to pass counterfeit checks."). This Court agrees with and adopts the reasoning of those circuits, such that where the name, account number, and routing number provided on the check are not used separately and independently from the transaction by paper instrument, that is, the passing of the check itself, there is no identity theft under the statute. Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Defendant is acquitted and discharged as to Count Four of the indictment.

    **SO ORDERED** this <u>first</u> day of July, 2010.

                                    *s/ Stephan P. Mickle*
                                    Stephan P. Mickle
                                    Chief United States District Judge